HARRISON V SINGAPORE AIRLINES CV01-5787 Line 23

ENTERED
CLERK, U.S. DISTRICT COURT

DEC 2 3 2002

CENTRAL DISTRICT OF CALIFORNIA
BY

FILED
CLERK, U.S. DISTRICT COURT

DEC 19 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE<br><br>AIR CRASH AT TAIPEI, TAIWAN, ON OCTOBER 31, 2000 | **Case No. MDL 1394 GAF (RCx)**<br><br>**ORDER GRANTING SINGAPORE AIRLINES, LTD. MOTION TO DISMISS PURSUANT TO 12(B)(1).**<br><br>This Document Relates to Those Cases Listed in Appendices A, B, and C Attached Hereto |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

I.

## INTRODUCTION

In its present motion, Singapore Airlines, Ltd. ("SIA") moves to dismiss several pending cases for lack of subject matter jurisdiction. The motion is based on SIA's contention that the accident in question is governed exclusively by the Warsaw Convention, and that the Court cannot exercise of jurisdiction as to these cases because the United States is not a proper forum under any of Article 28's four jurisdictional bases: (1) domicile of the carrier; (2) principal place of business of the carrier; (3) the place the ticket was purchased; (4) the place of final destination. The cases which are the subject of the present motion fall into two categories: (1) those cases where plaintiffs claim that the "carrier" on Flight SQ006 was United Airlines, Inc., its parent, and the Star Alliance (referenced collectively herein as "United") and asserted jurisdiction on the basis of the domicile and principal place of

1   business of the carrier; and (2) those cases in which the Plaintiffs claim that

2   jurisdiction exists independent of the Warsaw Convention, which they contend does

3   not apply because the United States is not in "privity of treaty" with the country from

4   which their round trip originated.

5        The issue raised in the first group of cases has been addressed in the Court's

6   ruling on United's motion to dismiss for lack of subject matter jurisdiction.  The Court

7   ruled that United was neither the "carrier" on the international flight that is the subject

8   of this case, nor an agent performing essential flight services for the flight's carrier,

9   SIA.  Since United's domicile and principal place of business was the only basis for

10  the assertion of treaty jurisdiction in these cases, no basis exists for asserting

11  jurisdiction over SIA.  SIA is neither domiciled nor operates its principal place of

12  business in the United States, and the Plaintiffs in this group of cases, all of whom

13  reside in treaty countries, did not buy their tickets in the United States and had a final

14  destination other than the United States.  Therefore, as to the first group of cases,

15  the motion is **GRANTED.**

16       The second group of cases involves Plaintiffs whose round trip travel

17  originated in Malaysia, Singapore, Vietnam, and Indonesia, and who claim that those

18  countries are not in privity of treaty with the United States, rendering "any

19  jurisdictional limitations contained in the Treaty . . . inapplicable to the claims by

20  these passengers against SIA." (Certain Plaintiffs' Opposition to SIA's Motion to

21  Dismiss Plaintiffs' Complaints for Lack of Subject Matter Jurisdiction at 3).  The Court

22  rejects this contention in view of the voluminous evidence submitted by SIA that the

23  aforementioned countries are signatories to the Warsaw Convention (i.e. "High

24  Contracting Parties").  Having reviewed the evidence submitted by the parties and

25  having conducted its own investigation, the Court concludes that SIA is correct and

26  that its motion under Rule 12(b)(1) should be granted with respect to the second

27  group of Plaintiffs.  Accordingly, the motion to dismiss for lack of subject matter

28  jurisdiction is **GRANTED** as to these cases also.

1       Accordingly, all of the cases originally brought in this Court are **DISMISSED**

2 **without leave to amend.** All of the cases which were removed from state are

3 **REMANDED** to the Superior Court for appropriate disposition.

4 II.

5 **BACKGROUND**

6       A Court addressing a Rule 12(b)(1) motion may consider evidence outside the

7 four corners of the operative complaint where the parties have presented evidence

8 going to the Court's subject matter jurisdiction.  See Thornhill Pub. v. General Tel. &

9 Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979); see also Doe v. Schacter, 804 F.

10 Supp. 53, 57 (N.D. Cal. 1992).  In deciding this motion, the Court considered the

11 parties' moving papers and the parties submissions in response to the Court's

12 September 16, 2002 Order that the parties submit a joint status report on the issue of

13 whether certain disputed countries were signatories to the Warsaw Convention.

14 **A. PLAINTIFFS' TRAVEL ON SINGAPORE AIRLINES**

15       Most Plaintiffs listed in Appendices A, B and C purchased round trip tickets

16 outside the United States with an itinerary that had as their ultimate destination

17 various countries, including Australia, Costa Rica, Mexico, India, South Africa,

18 Vietnam, Singapore, Indonesia, and Malaysia.  (See Decl. of Chin Hwee Ng in

19 Support of SIA"s Motion to Dismiss; Second Decl. of Chin Hwee Ng In Support of

20 SIA's Motion to Dismiss) (containing copies of the relevant Plaintiffs' tickets).  None

21 of the named Plaintiffs allege that their destination was the United States.  A few

22 Plaintiffs also bring third party claims, alleging loss of consortium in connection with

23 their spouses' or parent(s)' injuries.

24 **B. SIA'S DOMICILE AND PRINCIPAL PLACE OF BUSINESS**

25       SIA is neither domiciled in the United States nor has its principal place of

26 business here.  Plaintiffs concede that SIA is incorporated and is domiciled in

27 Singapore, where it has its principal place of business.

28

1    **C. SIA's OPERATION OF FLIGHT SQ006**

2           Flight SQ006, an SIA international flight from Taipei to Los Angeles, was

3    scheduled to depart the Taipei, Taiwan airport on October 31, 2000. The flight

4    crashed at the airport upon take off – an "accident" within the meaning of the

5    Warsaw Convention.

6    **D. THE COUNTRIES OF ORIGIN OF PLAINTIFFS' ROUND TRIP INTERNATIONAL FLIGHTS**

7           **1. The United Plaintiffs**

8           A number of Plaintiffs assert that United and SIA are the agents and

9    employees of each other and engaged in a joint enterprise where each is responsible

10   for the acts of the others. This issue was discussed and rejected by the Court during

11   the September 16, 2002 hearing on United's Rule 12(b)(1) motion. (Sep. 16, 2002

12   Civil Minute Order). On November 4, 2002, the Court issued a written Order granting

13   United's motion to dismiss pursuant to 12(b)(1). (See Nov. 4, 2002 Order Granting

14   United Airlines and the Star Alliance's Motions to Dismiss under Rule 12(b)(1)).

15          Plaintiffs in these cases were flying on international round trip tickets with the

16   following final destinations: Australia, Costa Rica, India, Mexico and South Africa.

17   Each of these countries is a signatory to both the Warsaw Convention and the

18   Hague Protocol.

19          **2. The "Privity of Treaty" Plaintiffs**

20          A number of the remaining Plaintiffs, who are the subject of this motion, were

21   traveling on international round trip tickets with their final destination in Indonesia,

22   Malaysia, Singapore and Vietnam. Some of these Plaintiffs have asserted that

23   "India, Singapore, Vietnam and Malaysia are not in Article 28 treaty relationship with

24   the United States." (Certain Plaintiffs' Opp. to SIA's Mot. to Dismiss Plaintiffs'

25   Complts. for Lack of Subject Matter Jurisdiction at 3). These Plaintiffs argue that the

26   only treaty in force in the United States is the original Warsaw Convention, while the

27   treaty in force in the other countries at issue is the Hague Protocol and so there is

28

1 | not "privity of contract" between the disputed countries and the United States. (Id. at

2 | 3-4).

3 |        Another set of Plaintiffs argues that SIA has not provided sufficient evidence

4 | that Malaysia and Indonesia adhere to the Warsaw Convention; SIA did not attach

5 | "any notification from the Government of the Republic of Indonesia [and the

6 | Government of Malaysia] to the Government of the Republic of Poland that

7 | Indonesia [and Malaysia] intend to adhere to the Warsaw Convention."

8 | (Memorandum of Plaintiffs [Leenardo, et al.; Man, et al; and Woo, et al.] in Response

9 | to Mot. to Dismiss of Defendant SIA at 4 [and 7]).  Moreover, this set of Plaintiffs,

10 | while conceding that Malaysia adhered to the Warsaw Convention as amended by

11 | the Hague Protocol, asserts that Indonesia "has not ratified the original Warsaw

12 | Convention or any amendment thereto." (Id. at 8-9).

13 | **3.  Evidence Regarding Signatories to the Warsaw Convention**

14 |        In reply, SIA attached copies of the following materials to support its assertion

15 | that the countries that were the final destination of the Plaintiffs named in SIA's

16 | motion (hereinafter referred to as "Named Plaintiffs") were signatories ("High

17 | Contracting Parties") to the Warsaw Convention:

18 |        (1) SIA attached a true and correct copy of the International Civil Aviation

19 |        Organization's ("ICAO") official list, which "upon information and

20 |        belief...reproduces the information received from the depository, the

21 |        Government of the Republic of Poland." (Cunningham Decl. at Exh. A).

22 |        (2) SIA included a "true and correct copy of U.S. Treaties in Force as of

23 |        January 1, 2000, Multilateral and Other Agreements."  (Id. at Exh. B).

24 |        (3) SIA attached a "true and correct copy of Proclamation Certifying Who Are

25 |        the High Contracting Parties to the Warsaw Convention Under the Carriage by

26 |        Air Act." (Id. at Exh. C).

27 |

28 |

(4) SIA included a true and correct copy of certain pages from Lawrence B.
Goldenhirsch's treatise entitled The Warsaw Convention Annotated: A Legal
Handbook. (Id. at Exh. D.).

(5) SIA attached true and correct copies of relevant pages in several
additional aviation law treatises. (Id. at Exhs. E-H).

(6) SIA included true and correct copies of relevant pages from a listing of
international legal instruments and a listing of convention membership lists.
(Id. at Exh. I, J).

(7) SIA attached copies of several cases -- one from a U.S. district court and
two from the Singapore Court of Appeal -- which concluded that Singapore
and Indonesia were "High Contracting Parties" for the purposes of the
Warsaw Convention.

In addition, SIA notes that certain Plaintiffs, such as Woo, who are now disputing
Warsaw Convention jurisdiction, originally pled in their complaints that their claims
were governed by the Warsaw Convention.

### 4. Additional Submissions on the Status of Disputed Countries

At the September 16, 2002 hearing, the Court reserved ruling on those
motions to dismiss where the signatory status of the country of round trip origin was
disputed. (Sep. 16, 2002 Civil Minutes Order). The Court ordered the relevant
parties to "meet and confer and report back to the Court on the issue no later than
Monday, September 30, 2002, by way of a joint status report." (Id.). The parties
were unable to reach agreement and submitted separate "joint status reports."

On September 30, 2002, SIA submitted an additional status report which
detailed SIA's efforts and attached a letter from a Polish law firm engaged to contact
the Department of Legal Affairs and Treaties, Ministry of Foreign Affairs, Republic of
Poland, regarding the treaty status of Indonesia and Malaysia. (See Singapore
Airlines, Ltd.'s Further Status Report Pursuant to the Court's Order Entered Sep. 23,
2002 at 2). In the letter, SIA's Polish attorney confirmed that the Warsaw

1  Convention depository included notes by which both countries declared themselves

2  bound by the Warsaw Convention.  (Id. at Exh. A).

3      In their October 1, 2002 submission, Plaintiffs Leenardo, et al.; Man, et al.;

4  and Woo reiterated their position that SIA could only meet its burden to prove that

5  Indonesia and Malaysia were High Contracting Parties to the Warsaw Convention by

6  submitting "notification from an authorized representative of the governments of ...

7  Indonesia [and] Malaysia to the government of the Republic of Poland." (Submission

8  for Joint Status Report by Plaintiffs Leenardo, et al., Man, et al., and Woo, et al. at

9  2).  These Plaintiffs also asserted that the U.S. has not ratified the Hague Protocol,

10  and so this Court does not have jurisdiction pursuant thereto.  (Id. at 3-4).

III.

**DISCUSSION**

## A. THE LEGAL STANDARD UNDER RULE 12(B)(1)

    The framework for resolving a motion to dismiss for lack of subject matter

jurisdiction depends as an initial matter on the nature of the movant's challenge.

Doe v. Schacter, 804 F. Supp. 53, 56-7 (N.D. Cal. 1992).  When the challenge is a

facial attack on the pleadings, the framework is similar to that applied on a 12(b)(6)

motion. Id.; see also California Practice Guide, 9:84 & 9:84a, p. 9-20 (citing Valdez v.

United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd 56 F.3d 1177 (9th Cir.

1995)).  On the other hand, where the movant has made a so-called "speaking

motion," the Court may hear and evaluate extrinsic evidence regarding its

jurisdiction; and it may resolve existing factual disputes.  See Thornhill Pub. v.

General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979); see also Doe v.

Schacter, 804 F. Supp. 53, 57 (N.D. Cal. 1992).

    The party invoking federal jurisdiction bears the burden of establishing by a

preponderance of competent evidence that the case is properly in federal court.  See

In re Ford Motor Co./Citibank (S.D.), 264 F.3d 952, 957 (9th Cir. 2001) (citing McNutt

7

1  v. Gen. Motors Acceptance Co., 298 U.S. 178, 189 (1936)); see also Sanchez v.

2  Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

3  **B. WARSAW CONVENTION JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST SIA**

4  **1.  The Exercise of Warsaw Convention Jurisdiction Is Limited**

5  With respect to those countries that who are signatories, the Warsaw

6  Convention provides the exclusive basis for bringing claims arising from accidents on

7  international flights.  Jurisdiction over Warsaw Convention suits may be asserted

8  only in a forum identified in Article 28 of the Warsaw Convention, which provides in

9  full:

10  An action for damages ***must be brought***, at the option of the plaintiff,

11  in the territory of one of the High Contracting Parties, either before the

12  court of the domicile of the carrier or of his principal place of business,

13  or where he has a place of business through which the contract has

14  been made, or before the court at the place of destination.

15  49 Stat. 3000, Art. 28. (emphasis added.).  SIA is not domiciled in the United States,

16  nor does it operate its principal place of business here.  Likewise, none of the

17  Plaintiffs at issue bought their tickets in the United States, and the United States was

18  not their final destination.  Courts have strictly construed these limitations on the

19  exercise of Warsaw Convention jurisdiction.  See, e.g., Kapar v. Kuwait Airways

20  Corp., 845 F.2d 1100 (D.C. Cir. 1988) (American citizen who purchased airline ticket

21  in Yemen for destination in Pakistan on Kuwait Airways could not bring suit in United

22  States courts).

23  **2.  The Warsaw Convention Grants Exclusive Jurisdiction Over Those**

24  **Claims Where it Applies**

25  The Warsaw Convention bars Plaintiffs from pursuing common law claims

26  against SIA because it "applies to all international transportation of persons, luggage

27  or goods performed by aircraft for hire," and provides for the exclusive cause of

28  action for personal injury or death occurring during such international transportation.

1  See El Al Airlines v. Tseng, 525 U.S. 155, 176 (1999) (holding that the Warsaw

2  Convention preempts recovery under any other law for personal injury damages in

3  international air traffic accidents); cf. Dazo, 295 F.3d at 939 (Warsaw Convention

4  does not protect non-international carrier who is otherwise not protected against the

5  acts of its agent).  As the Supreme Court stated in El Al Airlines, "[r]ecourse to local

6  law would undermine the uniform regulation of international air carrier liability that the

7  Convention was designed to foster." El Al Airlines, 525 U.S. at 156-57.

8  ### 3.  The United Cases

9      The United cases require little discussion.  Plaintiffs in those cases concede

10  that the Plaintiffs purchased round trip tickets outside the United States with final

11  destinations in Australia, Costa Rica, India, Mexico, and South Africa, all of which

12  these Plaintiffs concede are signatories to the Warsaw Convention.  Accordingly, two

13  of the four bases for treaty jurisdiction – the country where the ticket was purchased

14  and the country of final destination – do not apply.  Moreover, since they have

15  already lost on their claim that United was the carrier (which would have given rise to

16  jurisdiction on the basis of corporate domicile), and concede that SIA is neither

17  domiciled nor has its principal place of business in the United States, the two other

18  bases for the exercise of Warsaw Convention jurisdiction are not present.  Hence,

19  the motion to dismiss these cases – which are listed in Appendix A – is **GRANTED,**

20  and the cases are **DISMISSED WITHOUT LEAVE TO AMEND.**

21  ### 3.  The Privity of Treaty Issue

22  #### a.  The Hague Protocol Argument

23      Of the remaining Plaintiffs, some assert that India, Singapore, Vietnam and

24  Malaysia are not in privity of treaty with the United States because the only treaty in

25  force in the United States is the original Warsaw Convention, while the treaty in force

26  in the other countries at issue is the Hague Protocol.  (Certain Plaintiffs' Opp. to

27  SIA's Mot. to Dismiss Plaintiffs' Complts. for Lack of Subject Matter Jurisdiction at 3-

28  4).  There is not merit to this argument.

9

1    In 1955, the Warsaw Convention was amended and modified by the Hague

2    Protocol.  See Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 433-34 (2d Cir.

3    2001).   Although the United States never signed the Hague Protocol, the Court in

4    Fujitsu expressly held that the United States adopted the Hague Protocol by signing

5    and ratifying the Montreal Protocol No. 4, effective March 4, 1999.  Fujitsu, 247 F.3d

6    at 431; see also Chubb & Son, Inc. v. Asiana Airlines, 214 F.3d 301, 307 (2d Cir.

7    2000) (holding that, although the Hague Protocol could not be retroactively applied to

8    action that occurred before U.S. signed the Montreal Protocol No. 4, when it did sign

9    that document it "thereby acceded to the Warsaw Convention as amended by the

10   Hague Protocol...."); Montreal Protocol No. 4, opened for signature, Sep. 25, 1975,

11   Ch. III, Art. XVII(2) ("Ratification of this Protocol by any state which ... is not a Party

12   to the Warsaw Convention as amended at The Hague, 1955, shall have the effect of

13   accession to the Warsaw Convention as amended at The Hague, 1955....) (entered

14   into force in U.S. on Mar. 4, 1999).  Thus, these authorities refute the premise of the

15   argument under consideration – that privity of treaty does not exist because the

16   United States is not a party to the Hague Protocol.  Thus, the United States is in

17   privity of treaty with India, Singapore, Vietnam and Malaysia, and the Warsaw

18   Convention applies to Plaintiffs whose final destination fell within these countries.

19                    ***b. The Insufficient Evidence Argument***

20   Some Plaintiffs claim that SIA has not presented sufficient competent

21   evidence for the Court to find that Indonesia, Malaysia, Singapore and Vietnam are

22   High Contracting Parties and to apply the Warsaw Convention in their cases.  They

23   claim that the Court lacks jurisdiction to proceed under the Warsaw Convention

24   because SIA did not attach "any notification from the Government of the Republic of

25   Indonesia [and the Government of Malaysia] to the Government of the Republic of

26   Poland that Indonesia [and Malaysia] intend to adhere to the Warsaw Convention."

27   However, they present no controlling (or compelling) authority to support their

28   contention that the Court cannot consider the wealth of other evidence presented on

1   this point.  The Court finds most persuasive the International Civil Aviation

2   Organization's publication, which lists all signatories on file with the government of

3   Poland.  Moreover, the Court notes that other courts have exercised Warsaw

4   Convention jurisdiction over Vietnam, Malaysia, and Singapore.  See Thach v. China

5   Airlines, Ltd., 1997 WL 282254, *3 (S.D.N.Y. 1997) ("It is undisputed that the United

6   States and Vietnam are High Contracting Parties to the [Warsaw] Convention); see

7   also U.S. Dep't of State, Treaties in Force, 303-304 (1995)); Sulewski v. Fed.

8   Express Corp., 749 F. Supp. 506, 510 (S.D.N.Y. 1990) ("Most of the major countries

9   of the world adhere to the Warsaw Convention, including... Singapore, ... and

10  Malaysia."); Balani Impex Ltd. v. Malaysian Airline System Berhad, 1994 W.L.

11  176982, *2 (S.D.N.Y. 1994) (wherein Malaysian Airlines agreed that it was subject to

12  the Warsaw Convention).

13         Thus, as the named Plaintiffs' claims are subject to the Warsaw Convention's

14  limitations, and as the U.S. is not one of the four places wherein these Plaintiffs can

15  bring suit under the Warsaw Convention against Defendant SIA, the Court likewise

16  **GRANTS** SIA's Motion to Dismiss these Plaintiffs' claims.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

## IV.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** SIA's Rule 12(b)(1) motion.  The Court **ORDERS** that the cases listed in Appendices A, which were originally brought in this Court, be **DISMISSED WITHOUT LEAVE TO AMEND**, that the cases listed in Appendix B be **REMANDED** to state court for appropriate disposition by the Superior Court, and that SIA be **DISMISSED AS A DEFENDANT** from the cases listed in Appendix C.

IT IS SO ORDERED.

DATED: December 19, 2002

Judge Gary Allen Feess
United States District Court

12

## APPENDIX A
### Cases Identified in SIA's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Fed. Rul. 12(b)(1)] Which the Court DISMISSES Without Leave to Amend

| No. | PASSENGER(S) | CASE NAME | CASE NUMBER | COUNTRY |
|---|---|---|---|---|
| 1. | Broadfoot | Broadfoot v. SIA, et al. | CV 01-05098 | Australia |
| 2. | Jay Spack | Spack v. SIA, et al. | CV 01-05019 | Australia |
| 3. | Lin Kuang Hui | Shih Hsueh Chen, et al. v. SIA | CV 01-02074 | Costa Rica |
| 4. | John Harrison, Mary Harrison | Harrison v. SIA, et al. | CV 01-05787* | Indonesia |
| 5. | Teng Kuang Hui | Teng Kuang Hui v. SIA | CV 01-09053 | Malaysia |
| 6. | Anthony Woo Jonathan Yang, Yang Yang | Anthony Woo v. SIA, et al. | CV 01-03316 | Malaysia |
| 7. | Paul Blanchon | Paul Blanchon v. SIA, et al. | CV 01-07255 | Mexico |
| 8. | Susana Enriquez Dominguez | Dominguez v. SIA, et al. | CV 01-07256 | Mexico |
| 9. | Roberto Iglesias | Iglesias v. SIA, et al. | CV 01-07257 | Mexico |

* SIA is also dismissed as a defendant from related case number CV-02-2267.